| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| BRM HOME HEALTH, PLLC, ET AL., | § | BANKRUPTCY NO. 18-50678-CAG |
| | § | |
| DEBTORS | § | JOINT ADMINISTRATION PENDING |

---

**BRM HOME HEALTH, PLLC'S MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 363, AND 507 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 4001 AND 9014 (I) AUTHORIZING THE USE OF BRM'S CASH COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION, INCLUDING REPLACEMENT SECURITY INTERESTS**

---

## TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE

BRM Home Health, PLLC ("Debtor"), as debtor and debtor-in-possession in the above captioned case (the "Case"), by and through its proposed counsel Pulman, Cappuccio, Pullen, Benson & Jones, LLP, hereby file this *BRM Home Health, PLLC's Motion for Interim and Final Orders pursuant to 11 U.S.C. §§ 105, 361, 363, and 507 and Federal Rules of Bankruptcy Procedure 4001 and 9014 (I) Authorizing the Use of BRM's Cash Collateral and (II) Granting Adequate Protection, including Replacement Security Interests* (the "Motion"). In support of the Motion, Debtor respectfully represents as follows:

### JURISDICTION, VENUE & STATUTORY PREDICATE

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. On March 28, 2018 (the "Petition Date"), Debtor filed a voluntary petition under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code").

3.     Debtor continues to manage and operate its business as debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  No creditors' committee has been appointed in this Case by the United States Trustee.  Further, no trustee or examiner has been requested or appointed.

4.     The statutory predicates for the relief requested herein are Sections 105, 361, 363, and 507 of the Bankruptcy Code, Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.

5.     Attached hereto as Exhibit A is the proposed order on the Motion.

### CASE BACKGROUND

6.     Pre-petition, Debtor was a San Antonio-based home health care and hospice care company that provided skilled nursing to patients receiving care through Medicare, Medicaid, as well as private insurers.  Debtor also undertook provider services, which provided non-medical assistance to customers, which is paid through private insurers and Medicaid.

7.     Federal healthcare laws have changed, such that the way in which Medicare and Medicaid paid for home health care and hospice care left Debtor without sufficient funds to meet its ongoing obligations.  In order to maintain quality patient care during this time period, Debtor failed to make payments to the Internal Revenue Service (the "IRS") related to employment wage taxes and became past-due on various loan agreements it had with Compass Bank ("Compass").

8.     In an effort to return to profitability, Debtor ceased all operations related to home health care and hospice care and chose instead to focus on provider services.  Debtor has already discharged all patients.

9.     Debtor has continued to undertake provider services to its clients throughout Texas. Debtor also owns real property at 2900 Mossrock, San Antonio, Texas 78230 (the "Real

Property"), where it maintains corporate offices and leases to third party tenants. Debtor financed the purchase of the Real Property through a purchase money loan with Compass. Debtor also obtained a line of credit with Compass, which has been terminated. Compass's claims are secured by a first priority lien on all Debtor's assets, including the Real Property, the FFE and accounts receivable.

10.     Debtor filed these Cases to undertake a liquidation of those assets tied to home health and hospice care while implementing an effective reorganization of the obligations owed to creditors, specifically the debts owed to Compass and the IRS.

<u>**BACKGROUND SPECIFIC TO THE MOTION**</u>

11.     On or about August 7, 2015, Debtor, as borrower, and Compass, as lender, entered into a real property loan agreement whereby Debtor borrowed funds in the principal amount of $2,325,000 (the "Real Property Loan") to purchase the Real Property. Additionally, Compass extended an $800,000 revolving line of credit to Debtor on August 16, 2016, secured by essentially all of Debtor's assets and, pursuant to cross-collateralized provisions, by the Real Property.

12.     As of the Petition Date, Debtor was indebted to Compass in the amount of at least $2,560,951.00, plus fees, costs, expenses and attorney's fees incurred as of the Petition Date (collectively, the "Pre-Petition Claim") to the fullest extent authorized and/or permitted under the Loan Documents (as defined below) and applicable law. The Pre-Petition Claim constitutes a legal, valid and binding obligation of Debtor that is enforceable in accordance with the terms of the Loan Documents (as hereinafter defined) and applicable law. No portion of the Pre-Petition Claim, or any pre-Petition Date payments made to Compass that were applied to the obligations owing under the Loan Documents are subject to avoidance, subordination, recharacterization, recovery, offset, counterclaim, defense or any type of Claim (as defined in the Bankruptcy Code)

pursuant to the Bankruptcy Code or applicable non-bankruptcy law. Additionally, interest, fees, costs, expenses and attorney's fees continue to accrue on Debtor's indebtedness to Compass (collectively with the Pre-Petition Claim, "Compass's Claim").

13.     Compass's Claim is secured by, among other things, first priority, valid and perfected liens and security interests (collectively, "Compass's Liens") in substantially all of Debtor's assets, including, but not limited to, the Real Property, any fixtures attached thereto, Debtor's related personal property,[1] including any proceeds generated therefrom, as well as the revenues generated from the operation the Real Property and/or from any other business activity conducted by Debtor (collectively, the "Pre-Petition Collateral").[2] Compass's Claim, pursuant to Section 552(b) of the Bankruptcy Code, is also secured by security interests and liens in all post-petition revenues in any way related to the Pre-Petition Collateral, and all related proceeds and profits therefrom, which is Cash Collateral (as defined below), whether now in Debtor's (or persons in privity with Debtor) possession, custody, or control, or in which Debtor will obtain an interest during the pendency of the Cases, and all other Cash Collateral (as defined below) within the meaning of Section 363(a) of the Bankruptcy Code (collectively with the Pre-Petition Collateral and the Post-Petition Collateral (as defined below), the "Collateral").

14.     Compass's Cash Collateral is comprised of all cash and cash equivalents of the Debtor's bankruptcy estate (as defined in Sections 363(a) and/or 552 of the Bankruptcy Code), whether in the form of cash, negotiable instruments, documents of title, securities, deposit accounts, tariffs, governmental rentals, or in any other form, including, but not limited to, all

---

[1] The Debtor's personal property includes, without limitation, all existing and after acquired accounts, accounts receivable, deposit accounts, goods, furniture, equipment, machinery, general intangibles, instruments, documents, chattel paper, letters of credit, contracts, choses in action, claims, and causes of action (including commercial tort claims) as more specifically set forth in the Loan Documents.
[2] The description of the Pre-Petition Collateral set forth herein is not intended to be all inclusive, and is subject to the more complete description of the Pre-Petition Collateral set forth in the Loan Documents.

revenues, other income, proceeds, rents or profits of the Collateral, wherever located, that is now in the possession, custody or control of Debtor, or in which Debtor will obtain an interest during the pendency of this Case (collectively, "Cash Collateral").[3]

15.     Compass's Claim and Compass's Liens are evidenced by the Loan Documents (as defined below) between Debtor and Compass, which are more specifically described as follows, without limitation:

> a.     that certain Promissory Note in the principal amount of $2,325,000 dated as of August 7, 2015, executed by Debtor for the benefit of Compass;
>
> b.     that certain Business Loan Agreement between Debtor, as borrower, and Compass, as lender, dated as of August 16, 2016, evidencing Compass's extension of a revolving line of credit to Debtor in the principal amount of $800,000;
>
> c.     that certain Deed of Trust with Assignment of Leases and Rents dated as of August 16, 2016 (the "Deed of Trust"), executed by Debtor for the benefit of Compass, and recorded in the Official Public Records of Bexar County, Texas;

(collectively, the "Loan Documents").

16.     Prior to the Petition Date, the Line of Credit was terminated. Furthermore, the Real Property Note was accelerated based on cross-default provisions in the Loan Documents.   In order to preserve the ongoing business operations, Debtor filed a voluntary petition.  Debtor intends to quickly locate either another lender or pursue a sale of the Real Property, which the Debtor believes would be sufficient to satisfy Compass's Claim.

17.     In connection with filing the Motion, Debtor has prepared a 14-week budget demonstrating the use of Cash Collateral during that time period.  Attached hereto as Exhibit B is a true and correct copy of the Proposed Budget.

---

[3] For purposes of this Motion, "proceeds" of any of the Collateral shall mean "Proceeds," as defined in the Uniform Commercial Code, of such Collateral.

## RELIEF REQUESTED

18.     By this Motion, Debtor requests entry of an interim and final order authorizing Debtor to use the Cash Collateral.  Additionally, Debtor requests that the Court establish that the adequate protection offered by Debtor to Compass, as outlined in the Motion, is sufficient under 11 U.S.C. §§ 361 and 363.

## AUTHORITIES AND ARGUMENTS

### A.  The Court Should Authorize the Use of Cash Collateral

19.     Debtor requires use of the Cash Collateral to pay the expenses associated with operations and, in the case of Debtor, to make adequate protection payments to Compass.  If Debtor cannot use the Cash Collateral, Debtor will be unable to satisfy its post-petition expenses during the course of the Cases, which would be detrimental to proposing plans of reorganization. Additionally, without use of cash collateral, Debtor will not be able to make adequate assurance payments to Compass.  Further, Debtor requires the Cash Collateral to pay other ordinary business expenses such as insurance premiums, employee wages, and to pay anticipated post-petition deposits to utility providers.  Debtor intends to pay those post-petition expenses that are reasonable and necessary to ensure that they can continue to provide the same high quality service to its patients while correcting flawed business models that have generated the recent losses.

20.     Bankruptcy Code section 363(c)(2) provides that a debtor may not use, sell, or lease cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  Bankruptcy Code section 363(e) provides that, upon request of an entity that has an interest in property to be used by a debtor, the court shall prohibit or condition such use as necessary to provide adequate protection of such interest.  Compass will consent to the

use of Cash Collateral, based on Debtor's agreement to certain conditions that are set forth herein and in the proposed order attached as Exhibit A.

**B. Approval of Adequate Protection**

21.     Under Bankruptcy Code section 361, when adequate protection is required under Bankruptcy Code section 363 to protect against any diminution in value of an interest of an entity in property, a debtor may provide additional or replacement liens to the prepetition secured creditor. 11 U.S.C. §361(2). The determination of adequate protection is a fact-specific inquiry to be decided on a case-by-case basis. *See MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987). Adequate protection can be provided in a number of ways (see, e.g., 11 U.S.C. §361), with the focus being to protect a secured creditor from diminution in the value of its interest in the collateral during the period of use. *See In re 495 Cent. Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992)* (noting that the purpose of adequate protection is "to safeguard the secured creditor from diminution in the value of its interest" during Chapter 11 reorganization).

22.     In exchange for Debtor's use of the cash collateral, Debtor would propose adequate protection payments to Compass in the amount of approximately $77,000 each month. Additionally, Debtor will continue to make escrow payments to Compass for taxes during the course of the Case.

23.     Debtor will also agree that Compass shall have valid first-priority replacement and additional liens and security interests, with priority over all other liens and security interests, save and except for the ad valorem tax liens of Bexar County, Texas, in and upon any and all assets of Debtor and its affiliates that have also filed for chapter 11 relief, including, but not limited to, the Real Property, the Collateral, Cash Collateral and all assets described as Collateral in the Loan

Documents. Such replacement liens shall be automatically perfected without necessity to any further filing by Compass.

24.    As additional adequate protection, to the extent applicable, Compass shall be granted an allowed super-priority administrative expense claim as set forth under § 364(c)(1) of the Bankruptcy Code, with priority in payment over any and all administrative expenses arising under Sections 507(b) and 503(b) of the Bankruptcy Code, to the extent of any diminution in the value of Compass's interest in the Collateral and Cash Collateral.  Compass shall also be granted all of the other benefits and protections allowable under Sections 503(b) and 507(b) of the Bankruptcy Code.

25.    As further partial adequate protection: (a) in any sale of all or any portion of the Collateral under Section 363 of the Bankruptcy Code (whether pursuant to a plan of reorganization or otherwise), Compass shall have the right to credit bid pursuant to Section 363(k) of the Bankruptcy Code; (b) in any sale of all or any portion of the Collateral under any circumstances, including pursuant to a plan of reorganization, Compass shall have the right to credit bid pursuant to Sections 1123(b)(4) and/or 1129(b)(2)(A)(ii) of the Bankruptcy Code; and (c) Debtor shall not seek an order contrary to the provisions of this Paragraph.

26.    Debtor requests that the Court conduct an interim hearing to consider the relief requested in the Motion, as soon as possible, so that Debtor may maintain operations pending approval of a final order.  Debtor expects that the final form of order will be substantially in the same form as Exhibit A attached hereto.

WHEREFORE, Debtor respectfully requests that the Court enter an order authorizing Debtor to (a) use Cash Collateral, (b) provide adequate protection to Compass and (c) for such other and further relief to which Debtor may be justly entitled.

Respectfully submitted,

**PULMAN, CAPPUCCIO,
PULLEN, BENSON & JONES, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: */s/ Thomas Rice*
    Randall A. Pulman
    Texas State Bar No. 16393250
    rpulman@pulmanlaw.com
    Thomas Rice
    Texas State Bar No. 24025613
    trice@pulmanlaw.com
    Sydnee R. Garcia
    Texas State Bar No. 24092400
    sgarcia@pulmanlaw.com
    Matthew J. McGowan
    Texas State Bar No. 24098077
    mmcgowan@pulmanlaw.com

**ATTORNEYS FOR DEBTOR
AND DEBTOR-IN-POSSESSION**

I hereby certify that, on the 28th day of March 2018, a true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system, as set forth below. I further certify that it has been transmitted by first class mail to the parties on the attached service list, as required by Local Rule 2014(d).

*Via Email:* **vmskaggs@atlashall.com**
Vickie M. Skaggs
ATLAS, HALL & RODRIGUEZ, LLP
818 Pecan Blvd.
McAllen, Texas 78501

**COUNSEL TO Compass COMPASS**

*Via Email: Gary.Wright@usdoj.gov*
Gary Wright
Assistant United States Attorney
601 NW Loop 410, Suite 600
San Antonio, Texas 78216

**COUNSEL TO IRS**

*Via CM/ECF: USTPRegion07.SN.ECF@usdoj.gov*
United States Trustee - SA12
615 E. Houston Street, Suite 533
San Antonio, TX 78205

_/s/ Thomas Rice_____
Thomas Rice

# TOP CREDITORS

*Via USPS first-class mail to:*
Humana Medical
PO Box 3024
Milwaukee, WI 53201-3024

*Via USPS first-class mail to:*
CIT
ATTN: Lockbox #21146
131 S. Dearborn, Sixth Floor
Chicago, IL 60603

*Via USPS first-class mail to:*
Blue Sky Abilities
PO Box 151173
Austin, TX 78715

*Via USPS first-class mail to:*
Starmark
400 Field Drive
Lake Forest, IL 60045-2581

*Via USPS first-class mail to:*
Bay Bridge Administrators, LLC
PO Box 16190
Austin, TX 78716

*Via USPS first-class mail to:*
Dr. Jose E. Igoa
3600 N. 23rd St. #103
McAllen, TX 78501

*Via USPS first-class mail to:*
Bright Tree Home Health and Hospice
PO Box 101233
Atlanta, GA 30392-1233

*Via USPS first-class mail to:*
Community Health and Wellness, LLC
1 Chisholm Trail Ste. # 325
Round Rock, TX 78681

*Via USPS first-class mail to:*
Medline
Dept. 1080
PO Box 12180
Dallas, TX 75312-1080

*Via USPS first-class mail to:*
Allstate Insurance
PO Box 4344
Carol Stream, IL 60197-4344

*Via USPS first-class mail to:*
Moreno Physical Therapy
3632 Josefina Dr.
Laredo, TX 78041

*Via USPS first-class mail to:*
AT&T Mobility Business
PO Box 6463
Carol Stream, IL 60197-6463

*Via USPS first-class mail to:*
Ricoh USA, Inc.
PO Box 660342
Dallas, TX 75266

*Via USPS first-class mail to:*
Rio Rehab
5346 E US Highway 83
Unit 2, Bldg. A
Rio Grande City, TX 78582

*Via USPS first-class mail to:*
CDW LLC
200 N. Milwaukee Ave.
Vernon Hills, IL 60061

*Via USPS first-class mail to:*
Dr. Rigoberto Marin
864 Central Blvd.
Brownsville, TX 78520

*Via USPS first-class mail to:*
Concur Technologies, Inc.
62157 Collections Center Dr.
Chicago, IL 60693

*Via USPS first-class mail to:*
Stericycle, Inc.
PO Box 6575
Carol Stream, IL 60197-6575

*__Via USPS first-class mail to:__*
DJO Global
1430 Decision St.
Vista, CA 92081-8553

*__Via USPS first-class mail to:__*
Laredo Home Health Medical Equipment
1610 Bustamante, Ste. A
Laredo, TX 78040-5455

*__Via USPS first-class mail to:__*
National HME
7451 Airport Freeway
Richland Hills, TX 76118

*__Via USPS first-class mail to:__*
Las Palmas Nursing and Rehab Center
369 Mars Dr.
Cotulla, TX 78014

*__Via USPS first-class mail to:__*
Spade Medical Rehab Services
10333 Harwin Dr., Ste. 238
Houston, TX 77036

*__Via USPS first-class mail to:__*
Cove Healthcare LLC
422 Fair Oak Dr.
Stafford, TX 77477

*__Via USPS first-class mail to:__*
Ascension Rehab Services, LLC
14019 SW Freeway, Ste 301-387
Sugar Land, TX 77478

*__Via USPS first-class mail to:__*
Blue Cross Blue Shield of Texas
1001 E. Lookout Dr.
Richardson, TX 75082

*__Via USPS first-class mail to:__*
Speed-E'z Exchange & Courier
4115 Medical Dr., Ste. 205
San Antonio, TX 78229

*__Via USPS first-class mail to:__*
Texas Allied Therapy, PLLC
3005 Great Valley Drive
Cedar Park, TX 78613

*__Via USPS first-class mail to:__*
Eclipse Healthcare
Dax Richard
7003 Claybrook Dr.
Dallas, TX 75231

*__Via USPS first-class mail to:__*
South Texas Rehabilitation
Joe Arroyo
6014 Queen Bess
Corpus Christi, TX 78414

*__Via USPS first-class mail to:__*
Dynamic Therapy Services
PO Box 2093
Midland, TX 79702

*__Via USPS first-class mail to:__*
AllScripts LLC
24630 Network Place
Chicago, IL 60673-1246

*__Via USPS first-class mail to:__*
Direct Anchor Rehabilitation Services, Inc.
2217 Blodgett
Houston, TX 77004

*__Via USPS first-class mail to:__*
Dr. Raul R. Capitaine
6000 S. Staples, Ste. 406
Corpus Christi, TX 78413

*__Via USPS first-class mail to:__*
Reflexion Rehabilitation Services
3837 S. Padre Island Dr.
Corpus Christi, TX 78415

*__Via USPS first-class mail to:__*
Dr. Vincent Gregory Gonzaba
7616 Culebra Rd., Ste. 130
San Antonio, TX 78251

*__Via USPS first-class mail to:__*
Dr. Jesus Vilar
17827 Salado Draw
San Antonio, TX 78258

*__Via USPS first-class mail to:__*
HospiceMed
1030 W. Bellwood Lane
Murray, UT 84123

*__Via USPS first-class mail to:__*
Fry's
311 N. Sam Houston
San Benito, TX 78586

*__Via USPS first-class mail to:__*
Valley Baptist Health Systems
PO Box 847752 D
Dallas TX 75284

*__Via USPS first-class mail to:__*
Senior Care Center of Valle Grande
901 Wildrose Ln.
Brownsville TX 78520

*__Via USPS first-class mail to:__*
Curaspan Health Group Inc.
Dept. 2869
PO Box 122869
Dallas TX 75312

*__Via USPS first-class mail to:__*
Ebony Lake Nursing & Rehabilitation Center
001 Central Blvd.
Brownsville TX 78520

*__Via USPS first-class mail to:__*
San Pedro Manor
515 W. Ashby Place
San Antonio, TX 78212

*__Via USPS first-class mail to:__*
Alta Vista Rehab & Healthcare
510 Paredes Lines Rd.
Brownsville TX 78521

*__Via USPS first-class mail to:__*
Enclara Pharmacia Inc.
PO Box 95000-7255
Philadelphia, PA 19195

*__Via USPS first-class mail to:__*
StateServ Medical LLC
2310 E. University
Tempe, AZ 85281

*__Via USPS first-class mail to:__*
The Rio Mission Trails
6211 S. New Braunfels
San Antonio, TX 78223

*__Via USPS first-class mail to:__*
Trisun Lakeside
600 N. Peral St. Ste. 1100
Dallas TX 78520

*__Via USPS first-class mail to:__*
Normandy Terrace
841 Rice Rd.
San Antonio TX 78220

*__Via USPS first-class mail to:__*
Retama Manor South
905 Oaklawn
Pleasanton TX 78064

*__Via USPS first-class mail to:__*
Southwest General Hospital
PO Box 27396
Salt Lake City, UT 84127

*__Via USPS first-class mail to:__*
Hunters Pond
600 N. Pearl St. Ste 1100
Dallas TX 75201

***Via USPS first-class mail to:***
Maverick Nursing and Rehabilitation
3106 Bob Rogers Dr.
Eagle Pass TX 78852

***Via USPS first-class mail to:***
Legend Oak Healthcare
1640 Fairway
Kyle TX 78640

***Via USPS first-class mail to:***
Lone Star Ambulance
3700 Fredericksburg Rd., Ste. 117
San Antonio TX 78201

***Via USPS first-class mail to:***
Premier EMS
PO Box 898
Buda TX 78610

***Via USPS first-class mail to:***
Regency Manor Nursing and Rehab
1615 11th Street
Floresville TX 78114

***Via USPS first-class mail to:***
Laredo Nursing and Rehab Center
c/o Laredo Operator Ltd.
1701 Tournament Trail Dr.

***Via USPS first-class mail to:***
Huebner Creek Health and Rehab
8306 Huebner Rd.
San Antonio TX 78240

***Via USPS first-class mail to:***
Alamo Heights Health and Rehab
8223 Broadway
San Antonio TX 78209

***Via USPS first-class mail to:***
Baptist M&S Imaging
3327 Research Plaza
San Antonio TX 78235

***Via USPS first-class mail to:***
Med Mart
21195 IH 10 West Blvd., Ste. 1101
San Antonio TX 78257

***Via USPS first-class mail to:***
Regent Care Centers of Laredo
Central Billing Office
4801 NW Loop 410, Ste. 520
San Antonio TX 78229

# Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| BRM HOME HEALTH PLLC ET AL., | § | BANKRUPTCY NO. 18- |
| | § | |
| DEBTORS | § | PENDING JOINT ADMINISTRATION |

---

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 363, AND 507 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 4001 AND 9014 (I) AUTHORIZING THE USE OF BRM'S CASH COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION, INCLUDING REPLACEMENT SECURITY INTERESTS**

---

Came on for consideration the *Debtors' Motion for Interim and Final Orders pursuant to 11 U.S.C. §§ 105, 361, 363, and 507 and Federal Rules of Bankruptcy Procedure 4001 and 9014 (I) Authorizing the Use of BRM's Cash Collateral and (II) Granting Adequate Protection, including Replacement Security Interests* (the "Motion")[1] filed by BRM in the above captioned chapter 11 cases (the "Cases"), seeking entry of an order pursuant to Section 363 of Title 11 of the United States Code authorizing the use of BRM's Cash Collateral.  The Court finds that:

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

A.	This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and has constitutional authority to enter a final order in this matter.  This matter is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).

B.	Sufficient and adequate notice of the Motion and the hearing with respect thereto has been given to prevent immediate and irreparable harm pursuant to Federal Rules of Bankruptcy Procedure 2002, 4001(b), and 9006, and as required by Sections 102, 361, 362, and 363 of the Bankruptcy Code.

C.	Good and sufficient cause has been shown for the entry of this Interim Order.

D.	On March 28, 2018 (the "Petition Date"), Debtors filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code.  Debtors continue in possession and management of their businesses pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  To date, no trustee or creditors' committee has been appointed in these Cases.

E.	BRM Home Health PLLC ("BRM") owns and leases commercial real estate located at 2900 Mossrock, San Antonio, Texas 78230 (the "Real Property").

F.	Prior to, on, and after the Petition Date, BRM has received and collected, and continues to receive and collect rents from the Real Property (the "Rents"), which constitute the proceeds, profits, and accounts receivable generated by and arising from the leasing and management of the Real Property.

G.	As of the Petition Date, BRM acknowledges and agrees that it was indebted to Compass under various documents (the "Loan Documents") in the amount of at least $2,560,951.00, plus fees, costs, expenses and attorney's fees incurred as of the Petition Date (collectively, the "Pre-Petition Claim").  The Pre-Petition Claim constitutes a legal, valid and binding obligation of BRM that is enforceable in accordance with the terms of the Loan

Documents and applicable law. No portion of the Pre-Petition Claim, or any pre-Petition Date payments made to (or offsets made by) Compass that were applied to the obligations owing under the Loan Documents are subject to avoidance, subordination, recharacterization, recovery, offset, counterclaim, defense or any type of Claim (as defined in the Bankruptcy Code) pursuant to the Bankruptcy Code or applicable non-bankruptcy law. Additionally, interest, fees, costs, expenses and attorney's fees continue to accrue on the BRM's indebtedness to Compass.

H.     BRM acknowledges and agrees that it is in default of its debts and obligations owed to Compass under the Loan Documents. These defaults exist, have not been timely cured, and are continuing. The debts owed to Compass by BRM were accelerated prior to the Petition Date for all purposes in accordance with the Loan Documents and applicable law. These debts remain due and owing to Compass.

I.     BRM acknowledges and agrees that the Pre-Petition Claim is secured by, among other things, first priority, valid, perfected, and unavoidable liens and security interests (collectively, "Compass's Liens") in substantially all of BRM's assets, including, but not limited to, the Real Property, any fixtures attached thereto, the Rents, and all or substantially all of BRM's personal property[2] (collectively, the "Pre-Petition Collateral").[3] Pursuant to Section 552(b) of the Bankruptcy Code, the Pre-Petition Claim is also secured by security interests and liens in all post-petition revenues in any way related to the Pre-Petition Collateral, and all related proceeds and profits therefrom, which is BRM Cash Collateral (as hereinafter defined), whether now in BRM's (or persons in privity with BRM) possession, custody, or control, or in which

---

[2] BRM's personal property includes, without limitation, all of its existing and after-acquired accounts, accounts receivable, deposit accounts, goods, furniture, equipment, machinery, general intangibles, instruments, documents, chattel paper, letters of credit, contracts, choses in action, claims, and causes of action (including commercial tort claims), all as more specifically set forth in the Loan Documents.

[3] The description of the Pre-Petition Collateral set forth herein is not intended to be all inclusive, and is subject to the more complete description of the Pre-Petition Collateral set forth in the Loan Documents.

BRM will obtain an interest during the pendency of BRM's Case, and all other BRM Cash Collateral within the meaning of Section 363(a) of the Bankruptcy Code.

J.      BRM acknowledges and agrees that the BRM Cash Collateral is comprised of all cash and cash equivalents of BRM's bankruptcy estate (as defined in Sections 363(a) and/or 552 of the Bankruptcy Code), whether in the form of cash, negotiable instruments, accounts receivables, contracts, general intangibles, documents of title, securities, deposit accounts, tariffs, governmental rentals, or in any other form, including, but not limited to, all revenues, other income, proceeds, products, cash, distributions, checks, and other cash equivalents, and rents or profits, wherever located, that is now in the possession, custody or control of BRM, or in which BRM will obtain an interest during the pendency of the Cases (collectively, the "BRM Cash Collateral").[4]

K.      Counsel for Debtors has certified that notice of the Motion was given to: (i) the United States Trustee for the Western District of Texas, San Antonio Division; (ii) Compass and its counsel; (iii) counsel for the IRS and (iv) the parties listed on the Debtors' List of 20 largest unsecured creditors.

L.      BRM's use of the BRM Cash Collateral is necessary to preserve BRM's bankruptcy estate, and will avoid immediate and irreparable harm to BRM and its estate and creditors.  Accordingly, BRM asserts that it is in the best interests of the estate and its creditors for it to be permitted to utilize BRM Cash Collateral subject to the terms and conditions set forth herein.

---

[4] For purposes of this Interim Order, "proceeds" of any of the Collateral shall mean "Proceeds," as defined in the Uniform Commercial Code, of such Collateral.

M.    Based upon due notice being given, and after consideration of the Motion, the evidence, the arguments of counsel, and the agreement of the parties, this Court finds and concludes that the following relief (the "Interim Order") is appropriate upon the terms and conditions set forth below.

Based upon due notice being given, and after consideration of the Motion, the evidence, the arguments of counsel, and the agreement of the parties, this Court finds and concludes that the following relief is appropriate upon the terms and conditions set forth below.  It is therefore ORDERED that:

1.    The Motion is **GRANTED** as set forth in this Interim Order.

2.    This Order shall be considered an interim cash collateral order, and its terms shall be binding upon all parties, and their respective successors and assigns, including any trustees or other fiduciaries hereafter appointed as legal representatives of BRM or with respect to property of BRM's estate, whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case, and also shall be binding on all creditors of BRM and other parties-in-interest in this Bankruptcy.

3.    BRM is authorized to use BRM Cash Collateral solely to pay its expenses described in the Budget attached hereto as **Exhibit A** for the period (the "Interim Budget Period") of **March 29, 2018, through and including May 11, 2018** (the "Termination Date"). For the avoidance of doubt, this authorization does not permit BRM to use BRM Cash Collateral to pay any expenses of any other Debtor or any of BRM's principals or affiliates.  BRM must comply with the Budget so that actual disbursements during the term of this Interim Order do not exceed either: (a) the budgeted amount for each line-item on the Budget by more than 10%; or (b) the aggregate amount of all budgeted disbursements by more than 5% (collectively, the

"Permitted Variance") unless BRM obtains Compass's prior written approval to exceed the Permitted Variance. BRM shall not be permitted to carry over any unspent amount from one line item on the Budget to cover any shortage of budgeted costs on any other line item on the Budget.

4.      Except as set forth in this Interim Order, Debtors are prohibited from paying any indebtedness or transferring property to vendors, contractors, customers, or other persons whose debt may have been incurred prior to the Petition Date, except upon separate order of this Court, and in conformity with the Budget.

5.      To the extent that: (a) BRM requests via email Compass's consent to exceed any line item in the Budget and/or to make an expenditure that is not included in the Budget; and (b) Compass does not respond to such request via email within **three (3) business days**, such expenditure shall be deemed to be authorized.  Moreover, notwithstanding anything in this Interim Order or the Budget to the contrary, Compass reserves all rights to object to any motion, application, or other request for relief that relates to the line items on the Budget.

6.      Except upon the occurrence of a Termination Event, BRM's authority to use BRM Cash Collateral under the terms of this Interim Order shall continue until the Termination Date, at which time BRM's authority to use BRM Cash Collateral will expire unless BRM's authority to use BRM Cash Collateral is extended in accordance with the terms hereof.

7.      BRM shall open up a deposit account (the "BRM DIP Account") for the either direct or indirect deposit of all BRM Cash Collateral, and BRM shall make all disbursements from such BRM DIP Account.  BRM shall not commingle BRM Cash Collateral with cash collateral of other Debtors.

8.      No later than **5:00 p.m. (Central Time)** on April 3, 2017, and on the Tuesday of each subsequent calendar week, BRM shall provide to Compass and Compass's counsel (via

email to vmskaggs@atlashall.com and ken.daigrepont@bbva.com) a weekly accounting for the previous calendar week, of the following: (i) all deposits into, and disbursements from, the BRM DIP Account, and (ii) a weekly cash flow statement comparing actual receipts and disbursements to projected receipts and disbursements.

9.      BRM shall also deliver the following monthly reports and documents reflecting the previous month's activity to Compass and its counsel, via e-mail, by **5:00 p.m. Central Time** on the **twentieth (20th) day** of each calendar month beginning during the month of April 2018:

>    (a)      A Cash Collateral Reconciliation Report that reconciles the projected cash income and expenses as set forth on the Budget against the actual cash income and expenses for the applicable month; and

>    (b)      Complete copies of the most recent bank statements from the BRM DIP Account.

10.      Additionally, within forty-eight (48) hours of a written request by Compass, BRM shall provide Compass a copy of its most current online bank statement for the BRM DIP Account and/or a screen shot of the BRM DIP Account.

11.      Upon **three (3) business days'** notice to BRM's counsel by e-mail, BRM shall, during regular business hours, allow Compass and/or its attorneys or agents to review and copy: (a) all invoices, contracts, leases, and other documents and writings relating to any and all disbursements made or obligations incurred by BRM with respect to the operation of the Real Property and BRM's other businesses; and (b) any and all other books and records of BRM pertaining to its use of BRM Cash Collateral.

12.      Upon **three (3) business days'** notice to BRM's counsel by e-mail, BRM shall, during regular business hours, permit representatives, agents, and/or employees of Compass to visit, inspect, have reasonable access to and consult with, as the case may be: (a) the Real

Property and the BRM Cash Collateral, to, among other things: (i) conduct an appraisal of the Real Property and other assets of BRM and (ii) conduct a Property Condition/Inspection Report; (b) review BRM's books and records; (c) the personnel and/or agents of the BRM who are familiar with: (i) BRM's books and records and/or the information set forth therein and (ii) the Real Property and other assets of BRM; (d) BRM's business, for the purposes of, without limitation, reviewing leases and/or contracts, reviewing licenses and payments to taxing or other governmental authorities, and environmental or other site assessments of the Real Property; and, (e) such other information as Compass may reasonably request in connection with the Loan Documents or use of BRM Cash Collateral. BRM and its representatives, agents, and/or employees shall cooperate and consult with, and provide to such representatives, agents, and/or employees of Compass all such information as they may reasonably request during regular business hours.

13. Upon **three (3) business days'** notice to BRM's counsel by e-mail, BRM shall provide to Compass such additional financial or other information concerning the acts, conduct, property (including the Real Property and other assets of BRM), assets, liabilities, operations, financial condition, and/or transactions of BRM, or concerning any matter which may affect the administration of the estate, as Compass may from time to time reasonably request.

14. Delivery of e-mail notification to Compass's counsel shall be made to Vicki M. Skaggs at vmskaggs@atlashall.com. Delivery of e-mail notice to Debtor and its counsel shall be made to Thomas Rice at trice@pulmanlaw.com.

15. As adequate protection for BRM's use, consumption, sale, collection or other disposition of the Pre-Petition Collateral, pursuant to Sections 361, 363(c) and 363(e) of the Bankruptcy Code,the following measures of adequate protection are granted:

(a)     Adequate Protection Payments: BRM shall pay at least $77,000.00, as set forth in the Budget and/or as otherwise referenced in the Loan Documents, to Compass on the 20th day of each calendar month beginning with the month of April 2018.  Without further order of this Court, Compass may apply all payments identified in the Budget against the following items in the following order in accordance with the pre-petition amortization schedule established under the Loan Documents: (i) first, to post-petition, accrued interest at the default rate; (ii) second, to all fees and expenses, including attorneys' fees, incurred by Compass prior to and during these Cases to the extent permitted under the Loan Documents; (iii) third, to the principal amounts due under any of the Loan Documents.  The automatic stay under 11 U.S.C. § 362(a) is hereby modified to the extent necessary to permit Compass to receive and apply the payments as provided for hereunder.

(b)     Tax Escrow Payments: BRM shall also pay Compass an amount equal to not less than approximately one-twelfth (1/12) of the amounts assessed by the Bexar County, Texas taxing authorities related to *ad valorem* property taxes for the 2018 tax year each month beginning with the month of April 2018, as set forth in the Budget, but in no event shall such monthly payment be less than $7500.00.  Such tax escrow payments shall be held in escrow by Compass.  Funds received and held in escrow by Compass pursuant to this sub-paragraph (the "Tax Escrow") shall not be utilized except upon further order from this Court or upon Compass's written consent.  The automatic stay under 11 U.S.C. § 362(a) is hereby modified to the extent necessary to permit Compass to receive and remit the payments provided for hereunder to the appropriate municipal taxing authorities.

(d)     Direction of Protective Payments:   The adequate protection payments and the various escrow payments set forth in this Interim Order and attached Budget shall be sent by wire or other means per directions to be provided by counsel for Compass.

(e)     Real Property Maintenance Funds:  BRM shall open a new Debtor-in-Possession joint checking account (the "REOC Account") with REOC San Antonio ("REOC"), the current leasing agent for the Real Property, so that REOC can make the monthly maintenance payments related to the Real Property, including capital expenditures, maintenance, utilities, and insurance, based on a budget provided by REOC.  BRM shall not remove any funds from the REOC Account without prior written permission from Compass.

(f)     Replacement Liens.

(i) Compass is hereby granted and shall have from and after the Petition Date, valid and automatically perfected (without necessity of the execution by Debtor of additional mortgages, security agreements, pledge agreements, financing statements or other documents) first-priority replacement and additional liens and security interests, with priority over all other liens and security interests in and upon any and all assets of BRM (collectively, the "Collateral"), whenever acquired or generated, including, but not limited to, estate tax refunds, insurance proceeds, insurance premium refunds, security deposits, utility deposits, and bonds and proceeds of same, whether acquired before or after the Petition Date, whether now owned and existing or hereafter acquired, created, or arising, and all products and proceeds thereof (including, without limitation, claims of against third parties for loss or damage to the aforementioned items), and all accessions thereto, substitutions and replacements thereof, and wherever located, and all assets acquired by BRM post-petition and recoveries by the estate under any provision of Bankruptcy Code or other applicable law (except recoveries pursuant to 11 U.S.C. §§ 547, 548, and 550), leases and occupancy agreements and all amendments, modifications, extensions, or renewals of leases and occupancy agreements relating to the Real Property, which, on or after the Petition Date, BRM has entered into or enters into, and all rents, income and profits arising therefrom, and also Compass shall be and hereby is granted replacement security interests and liens in any real or personal property BRM's estate acquired or acquires on or after the Petition Date in which Compass would have had a valid, effective and perfected lien or security interest were it not for 11 U.S.C. § 552(a) (collectively, the "Post-Petition Liens"). The Post-Petition Liens shall be equal in amount to the diminution in value of the Pre-Petition Collateral plus the amount of BRM Cash Collateral expended pursuant to this Interim Order. The liens and security interests granted hereunder to Compass shall take priority over any post-petition assignment, lien, or interest in favor of any other person.

(ii) As additional adequate protection of Compass's interests in the Pre-Petition Collateral and BRM Cash Collateral, and only to the extent applicable and permissible under the Bankruptcy Code, Compass shall have an allowed super-priority administrative expense claim as set forth under § 364(c)(1) of the Bankruptcy Code, with priority in payment over any and all administrative expenses arising under Sections 507(b) and 503(b) of the Bankruptcy Code, to the extent of any diminution in the value of Compass's interest in the Pre-Petition Collateral and BRM Cash Collateral. No costs or expenses of administration that have been or may be incurred in these proceedings and no priority claims are or will be prior to or on parity with claims of Compass against BRM or with the security interests of Compass, and no cost or expense of administration shall be imposed against Compass, its claims, or its Collateral under Sections 506(c) or 552 of the Bankruptcy Code or otherwise during the Interim

Budget Period. Compass is also hereby granted all of the other benefits and protections allowable under Sections 503(b) and 507(b) of the Bankruptcy Code.

(iii) The Post-Petition Liens are, and for all purposes shall be deemed to be, valid and enforceable, and no filing or recordation or other act shall be necessary to create or perfect such liens. Compass shall not be required to file financing statements, mortgages or other documents in any jurisdiction or take any other action in order to validate or perfect the respective security interests granted to it under this Interim Order and related instruments, documents and agreements. To the extent that Section 362 of the Bankruptcy Code, or any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the liens and security interests authorized or created in this Interim Order, or otherwise would impose filing or registration requirements with respect to such replacement liens, such law is hereby preempted to the maximum extent permitted by the Bankruptcy Code, other applicable federal law, and the judicial power of this Court. If Compass shall, in its sole discretion, choose to file such financing statements, mortgages or other documents or otherwise confirm perfection of such security interests, all such financing statements or similar documents shall be deemed to have been filed or recorded and perfected at the time and on the date of entry of this Interim Order.

(iv) At the reasonable request of Compass, BRM shall execute and deliver to Compass such further documents, including, but not limited to, any tax returns or instruments used to remit tax payments, and other instruments, and will do such further acts as Compass may deem advisable or necessary to assure to Compass the granting and perfection of all of the rights, liens, and interests given or intended to be given to Compass pursuant to the Loan Documents and this Interim Order.

16. None of the Post-Petition Liens granted under this Interim Order shall prime any valid *ad valorem* property tax liens and/or claims, if any.

17. As further partial adequate protection: (a) in any sale of all or any portion of the Collateral under Section 363 of the Bankruptcy Code (whether pursuant to a plan of reorganization or otherwise), Compass shall have the right to credit bid pursuant to Section 363(k) of the Bankruptcy Code; (b) in any sale of all or any portion of the Collateral under any circumstances, including pursuant to a plan of reorganization, Compass shall have the right to

credit bid pursuant to Sections 1123(b)(4) and/or 1129(b)(2)(A)(ii) of the Bankruptcy Code; and, (c) Debtors shall not seek an order contrary to the provisions of this Paragraph.

18.     Nothing herein shall be deemed to be a waiver by Compass of its right to request additional or further protection of its interests in any Pre-Petition Collateral, to move for relief from the automatic stay, to seek the appointment of a trustee or examiner or the conversion or dismissal of the Chapter 11 Case of BRM, or to request any other relief in this case; nor shall anything herein constitute an admission by Compass of the quantity, quality or value of any Collateral securing any indebtedness owed to Compass or constitute a finding of adequate protection with respect to the interests of Compass in any Collateral.  Compass shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of Section 507(b) of the Bankruptcy Code in connection with any use, sale or other disposition of any of the Collateral, to the extent that the protection afforded by this Order to Compass's interests in any Collateral proves to be inadequate.

19.     In addition to the foregoing, upon the written agreement by Compass, and to the extent funds are available in the Tax Escrow, or the BRM DIP Account, BRM, and/or Compass on BRM's behalf, may elect to pay taxing authorities carriers all, or portions of, 2017 and/or 2018 ad valorem taxes owed for the Real Property and Collateral Notwithstanding the foregoing, Compass is not obligated to advance any funds of Compass in order to pay such taxes or insurance.

20.     BRM shall timely pay all insurance premiums due in order to maintain all insurance required under the Loan Documents, including casualty and flood insurance for the Real Property.

21.     The occurrence of any of the following shall constitute an event of default under this Interim Order: (a) any breach by BRM of its obligations under this Interim Order; (b) conversion of BRM's Case to a case under Chapter 7 of the Bankruptcy Code; (c) appointment of a trustee for BRM; (d) dismissal of BRM's Case; or (e) the entry of any order reversing, revoking, or rescinding this Interim Order without express prior written consent of Compass (any of the foregoing events of default being referred to in this Interim Order individually as an "Event of Default," and collectively as "Events of Default").

22.     Upon the occurrence of any Event of Default, Compass shall provide BRM's counsel written notice of such default (which may be accomplished as set forth in this Interim Order or by e-mail, facsimile transmission, hand delivery, or overnight delivery).  If BRM has failed to fully and completely cure any such Event of Default to Compass's satisfaction within **three (3) business days** after receipt of notice of the Event of Default by BRM's counsel, then, without any further act, notice or action by Compass, or any further notice, hearing, act or order of this Court, BRM's authority to use BRM Cash Collateral, and any and all obligations of Compass under this Interim Order shall terminate.  Upon such termination, BRM shall immediately cease using, distributing, or paying BRM Cash Collateral from the BRM DIP Account.

23.     In the event that BRM has failed to fully and completely cure an Event of Default to Compass's satisfaction within **three (3) business days** after receipt of notice of the Event of Default by BRM's Counsel, Compass shall be entitled to seek an expedited hearing for relief from the automatic stay, which request for expedited hearing the BRM shall not oppose.

24.     Compass's failure to provide written notice of an Event of Default shall in no way be deemed a waiver of Compass's rights or remedies under this Interim Order.

25.     Any termination of BRM's authority to use BRM Cash Collateral hereunder shall be without prejudice to BRM's right to file an additional motion for authority to use cash collateral.

26.     The automatic stay under Section 362(a) of the Bankruptcy Code shall be and hereby is modified only to the extent necessary to permit Compass to collect and apply payments and proceeds with respect to the Collateral and BRM Cash Collateral in accordance with the terms and provisions of this Interim Order.

27.     Except as otherwise provided herein, the terms and conditions of the Loan Documents shall not be impaired by this Interim Order, and Compass shall have all of its rights and remedies thereunder, subject to the provisions of the Bankruptcy Code, applicable state law and the authority of this Court.   Subject to the foregoing, BRM shall perform all of its obligations under the Loan Documents.

28.     Nothing contained in this Interim Order shall be deemed to be a consent by Compass to any charge, lien, assessment, or claim against the Real Property or Collateral, under Section 506(c) of the Bankruptcy Code or otherwise, and shall be without prejudice to any and all of Compass's rights under the Loan Documents, the Bankruptcy Code, and other applicable law.

29.     BRM is authorized to use BRM Cash Collateral to pay the U.S. Trustee's quarterly fees, pursuant to 28 U.S.C. § 1930(a)(6), as they become due, so long as quarterly fees appear as a line item in the Budget.

30.     Notwithstanding any other provision of this Interim Order, in the event that BRM possesses any cash or cash equivalents during the pendency of this Case that are not subject to Compass's Liens and/or the Post-Petition Liens, such cash or cash equivalents shall be used and

expended (or deemed to have been used or expended) by BRM prior to the use of any BRM Cash Collateral.

31.     This Interim Order, and the protections granted to Compass herein, shall be effective as of March 29, 2016, upon signature by this Court, and may be relied upon by Compass and BRM without the necessity of entry into the docket sheet of the Cases.  The parties may also stipulate and agree to extend the terms and/or duration of this Interim Order, pursuant to either the attached Budget or another budget agreed to by the parties, by filing a Notice with this Court and without seeking a further order from this Court. This Order and its terms and provisions shall:  (a) survive entry of any order that may be entered (i) converting this chapter 11 case to a chapter 7 case or dismissing this chapter 11 case, (ii) appointing a chapter 11 trustee, or (iii) confirming or consummating any chapter 11 plan in this case; and (b) continue in any superseding case of any Debtor under the Bankruptcy Code.

32.     No subsequent stay, modification, termination, failure to extend the terms of, or vacation of this Order shall affect, limit, or modify any claim, right, or lien granted hereunder to Compass, nor shall any such stay, modification, or vacation limit, affect, or modify the validity, priority, enforceability, or perfection of any security interest, mortgage, lien, or priority granted herein.

33.     The replacement liens and security interests and rights and remedies granted hereunder and any actions taken pursuant hereto shall survive and shall not be modified, altered, or impaired in any manner by (a) a plan or any confirmation order, by any other financings or extensions of credit or incurring of debt by any of the Debtors or any trustee or successor-in-interest, whether pursuant to Bankruptcy Code § 364 or otherwise, (b) entry of an

order converting any of the chapter 11 cases to chapter 7 or dismissing any of the chapter 11 cases, (c) entry of any other order, or (d) any act or omission whatsoever.

34.     No act committed or action taken by Compass under this Interim Order shall be used, construed, or deemed to hold Compass to be in control of any of the Debtors, or the governance, management, or operations of any of the Debtors for any purpose, without limitation.  Nor will Compass be held as a "responsible person," an "owner or operator," or a person in "control" with respect to the governance, management or operation of any of the Debtors' businesses (as such terms, or any similar terms, or any similar terms, are used in the Internal Revenue Code, Compensation and Liability Act, Bankruptcy Code, each as may be amended from time to time, or any other federal or state statute at law, in equity, or otherwise) by virtue of the interests, rights, and remedies granted to or conferred upon Compass under this Interim Order including, among other things, such rights and remedies as may be exercised by Compass in connection with this Interim Order.

35.     Pursuant to Bankruptcy Rule 4001(b)(2), a second Interim or Final Hearing on the Motion is set for _____ __, 2018, at __ a.m./p.m. (the "Hearing") in Courtroom 3 of the United States Courthouse located at 615 E. Houston St., San Antonio, Texas 78205.  Any party-in-interest objecting to the relief sought in the Motion shall serve and file written objections, which shall be served upon: (a) counsel for the Debtors; (b) counsel for Compass; (c) counsel for the IRS; and (d) the Office of the U.S. Trustee for the Western District of Texas, San Antonio Division.  Moreover, all objections shall be filed with the Clerk of the United States Bankruptcy Court for the Western District of Texas, San Antonio Division no later than two (2) business days before the Hearing.

36.     This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Interim Order.

# # #

Submitted by:

Thomas Rice
Texas State Bar No. 24025613
trice@pulmanlaw.com
Sydnee R. Garcia
Texas State Bar No. 24092400
sgarcia@pulmanlaw.com
Matthew J. McGowan
Texas State Bar No. 24098077
mmcgowan@pulmanlaw.com

**PULMAN, CAPPUCCIO,**
**PULLEN, BENSON & JONES, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

**PROPOSED ATTORNEYS FOR DEBTORS AND DEBTORS-IN-POSSESSION**

# Exhibit B

**BRM Home Health PLLC**
**14 Week Cash Flow Forecast**
**As of March 29, 2018**

| Description | Week ending 3/30/2018 | Week ending 4/6/2018 | Week ending 4/13/2018 | Week ending 4/20/2018 | Week ending 4/27/2018 | Week ending 5/4/2018 | Week ending 5/11/2018 | Week ending 5/18/2018 | Week ending 5/25/2018 | Week ending 6/1/2018 | Week ending 6/8/2018 | Week ending 6/15/2018 | Week ending 6/22/2018 | Week ending 6/29/2018 | Week ending 7/6/2018 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Expected Revenue | 310,000 | 400,000 | 400,000 | 400,000 | 400,000 | 400,000 | 400,000 | 400,000 | 400,000 | 400,000 | 400,000 | 400,000 | 400,000 | 400,000 | 400,000 | 5,910,000 |
| | | | | | | | | | | | | | | | | |
| Direct Pateint Service Labor | | 528,000 | | 528,000 | | 528,000 | | 528,000 | | 528,000 | | 528,000 | | | 528,000 | 3,696,000 |
| Auto Mileage Reimbursed | | 7,500 | | 7,500 | | 7,500 | | 7,500 | | 7,500 | | 7,500 | | | 7,500 | 52,500 |
| Contracted Therapists | 26,000 | | | 26,000 | | | | 26,000 | | | | 26,000 | | | | 104,000 |
| | | | | | | | | | | | | | | | | |
| Administration Wages | | | | | | | | | | | | | | | | |
| Insder Compensation - Rodney Mesquias | 7,219 | | 7,219 | | 7,219 | | 7,219 | | 7,219 | | 7,219 | | 7,219 | | 7,219 | 57,752 |
| Insder Compensation - Tammy Mesquias | 3,151 | | 3,151 | | 3,151 | | 3,151 | | 3,151 | | 3,151 | | 3,151 | | 3,151 | 25,208 |
| Insder Compensation - Randy Mesquias | 828 | | 828 | | 828 | | 828 | | 828 | | 828 | | 828 | | 828 | 6,624 |
| Skilled Nursing | 15,000 | | 15,000 | | 15,000 | | 15,000 | | 15,000 | | 15,000 | | 15,000 | | 15,000 | 120,000 |
| IT | 4,000 | | 4,000 | | 4,000 | | 4,000 | | 4,000 | | 4,000 | | 4,000 | | 4,000 | 32,000 |
| Accounting & Billing | 12,000 | | 12,000 | | 12,000 | | 12,000 | | 12,000 | | 12,000 | | 12,000 | | 12,000 | 96,000 |
| Other G&A | 32,100 | | 33,000 | | 33,000 | | 33,000 | | 33,000 | | 33,000 | | 33,000 | | 33,000 | 263,100 |
| | | | | | | | | | | | | | | | | |
| Total Payroll Costs | 100,298 | 535,500 | 75,198 | 561,500 | 75,198 | 535,500 | 75,198 | 561,500 | 75,198 | 535,500 | 75,198 | 561,500 | 75,198 | | 610,698 | 4,453,184 |
| | | | | | | | | | | | | | | | | |
| FICA & Medicare Taxes | | 46,650 | | 46,718 | | 46,718 | | 46,718 | | 46,718 | | 46,718 | | 5,753 | 46,718 | 332,713 |
| Federal Unemployment Taxes | | | | | 602 | | | | | | | | | | 15,000 | 15,602 |
| State Unemployment Taxes | | | | | 2,708 | | | | | | | | | | 33,750 | 36,458 |
| | | | | | | | | | | | | | | | | |
| Total Compensation Costs | 100,298 | 582,150 | 75,198 | 608,218 | 78,508 | 582,218 | 75,198 | 608,218 | 75,198 | 582,218 | 75,198 | 608,218 | 75,198 | | 706,166 | 4,837,956 |
| | | | | | | | | | | | | | | | | |
| Operating Expenses | | | | | | | | | | | | | | | | |
| Rent | | 36,000 | | | 36,000 | | | | | | | | | | 36,000 | 144,000 |
| Telephone & Utilities | | 50,000 | 50,000 | | | | | 50,000 | | | | 50,000 | | | | 200,000 |
| Insurance | | | 6,872 | | | 6,872 | | | | 6,872 | | | | | 6,872 | 27,488 |
| Office and Computer Supplies | | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 35,000 |
| Medical Supplies | | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 42,000 |
| Other | | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 56,000 |
| Marketing | | | | | 2,500 | | | | 2,500 | | | | | 2,500 | | 7,500 |
| Shipping | | | | | 600 | | | | 600 | | | | | 600 | | 1,800 |
| Contractor Payments | 2,500 | | | | | | | | | | | | | | | 2,500 |
| Vehicle Loans Compass | | | | 1,100 | | | | 1,100 | | | | | 1,100 | | | 3,300 |
| Vehicle Loans FMCC | | | | 2,253 | | | | 2,253 | | | | | 2,253 | | | 6,759 |
| Vehicle Loans with GMAC | | | | 1,800 | | | | 1,800 | | | | | 1,800 | | | 5,400 |
| Allstate Car Insurance | | 4,000 | | | | 4,000 | | | | 4,000 | | | | | 4,000 | 16,000 |
| Crime Policy | | | | 801 | | | | 801 | | | | | 801 | | | 2,403 |
| American Express | | | 3,000 | | | | 3,000 | | | | | 3,000 | | | | 9,000 |
| Compass Building Escrow Tax Payment | | 7,500 | | | | 7,500 | | | | 7,500 | | | | | 7,500 | 30,000 |
| Compass Payment Real Property | | | | 38,000 | | | | 38,000 | | | | 38,000 | | | | 114,000 |
| Compass Payment Line of Credit | | | | 39,000 | | | | 39,000 | | | | 39,000 | | | | 117,000 |
| Mossrock 2017 Building Taxes | | | | | | | | | | | | | 45,000 | | | 45,000 |
| East End Glass | 12,061 | | | | | | | | | | | | | | | 12,061 |
| | | | | | | | | | | | | | | | | |
| Total Other Expemse | 14,561 | 107,000 | 69,372 | 92,454 | 48,600 | 27,872 | 12,500 | 142,454 | 48,600 | 27,872 | 9,500 | 139,500 | 60,454 | 12,600 | 63,872 | 877,211 |
| | | | | | | | | | | | | | | | | |
| Total Cash Requirements | 114,859 | 689,150 | 144,570 | 700,672 | 127,108 | 610,090 | 87,698 | 750,672 | 123,798 | 610,090 | 84,698 | 747,718 | 135,652 | 12,600 | 770,038 | 5,715,167 |
| | | | | | | | | | | | | | | | | |
| **Net Weekly Cash Flow** | **195,141** | **(289,150)** | **255,430** | **(300,672)** | **272,892** | **(210,090)** | **312,302** | **(350,672)** | **276,202** | **(210,090)** | **315,302** | **(347,718)** | **264,348** | **387,400** | **(370,038)** | **200,585** |
| | | | | | | | | | | | | | | | | |
| Beginning Cash Balance | 237,058 | 432,199 | 143,049 | 398,479 | 97,807 | 370,699 | 160,609 | 472,911 | 122,238 | 398,440 | 188,350 | 503,652 | 155,934 | 420,282 | 420,282 | 237,058 |
| | | | | | | | | | | | | | | | | |
| Debt Service | | | | | | | | | | | | | | | | - |
| | | | | | | | | | | | | | | | | |
| **Ending Cash Balance** | **432,199** | **143,049** | **398,479** | **97,807** | **370,699** | **160,609** | **472,911** | **122,238** | **398,440** | **188,350** | **503,652** | **155,934** | **420,282** | **807,682** | **50,243** | **437,643** |